IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | CIVIL ACTION NO.  08-0431-KD-B |
| | ) | |
| ARTHUR C. WITHERINGTON and | ) | |
| PINA D. WITHERINGTON a/k/a PINA | ) | |
| H. WITHERINGTON d/b/a PINA'S | ) | |
| MOBILE HOME PARK, | ) | |
| | ) | |
| Defendants. | ) | |

## CONSENT ORDER

### I.  Factual and Procedural Background

The United States initiated this action on July 23, 2008 against Arthur C.
Witherington and Pina D. Witherington a/k/a Pina H. Witherington d/b/a PINA'S
MOBILE  HOME PARK ("Defendants").

In its complaint, the United States alleges that Defendants violated the Fair
Housing Act, Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3601, *et seq.*

("the Act"), on the basis of familial status with respect to residential rental units or dwellings at the Pina's Mobile Home Park, 1105 Whispering Pines Road, Daphne, Alabama.

The United States alleges that were this case to proceed to trial, the United States would present evidence including the following:

1.     At all relevant times prior to the filing of this lawsuit, Defendants owned and operated Pina's Mobile Home Park, a 60 lot mobile home park.

2.     In February and April 2006, Ms. Hope I. Watkins visited the mobile home park to inquire about renting a  mobile home or a lot onto which she could relocate her mobile home.  Having received notice from her current landlord in Fairhope, Alabama to vacate the mobile home park there because the owner was redeveloping the property into a single family subdivision, Ms. Watkins was seeking replacement housing or another location to relocate a mobile home. At various times, Ms. Watkins was informed by Defendants that:  for each child she would be charged more rent above the base rental factor;  she had too many children after she explained she had three children; and there were no lots available to locate her mobile home.

The United States alleges that the conduct of defendants as described in the preceding paragraphs constitutes refusing to rent after the making of a bona fide offer, refusing to negotiate for the rental of, or otherwise making unavailable or denying a

dwelling to any person because of familial status, in violation of 42 U.S.C. § 3604(a); discriminating in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection therewith, because of familial status, in violation of 42 U.S.C. § 3604(b); making, printing, or publishing, or causing to be made, printed, or published any notice, statement, or advertisement, with respect to the rental of a dwelling that indicates any preference, limitation, or discrimination based on familial status, or an intention to make any such preference, limitation, or discrimination, in violation of 42 U.S.C. § 3604(c); and representing to persons because of familial status that a dwelling was not available for rental when such dwelling was in fact so available, in violation of 42 U.S.C. § 3604(d). Defendants have admitted to a thirty-year practice of charging more money per child and limiting families to two children as of the time they move into the premises.

The United States further alleges that Defendants' conduct as described above constitutes a pattern or practice of resistance to the full enjoyment of rights granted by the Act; and a denial to a group of persons of rights granted by the Act, which denial raises an issue of general public importance, in violation of 42 U.S.C. § 3614(a).

The parties desire to avoid costly and protracted litigation and agree that the claims against Defendants should be settled and resolved without the necessity of a

trial. The parties have agreed to the entry of this Consent Order, as indicated by the signatures below.

Therefore, it is **ORDERED, ADJUDGED and DECREED** as follows:

## II. Injunction

1.   Defendants, their agents, employees, successors, and all persons in active concert or participation with them are hereby enjoined, with respect to the rental of dwellings, from:

      a.   Refusing to rent after the making of a bona fide offer, or refusing to negotiate for the rental of, or otherwise making unavailable or denying, a dwelling to any person because of familial status;

      b.   Discriminating against any person in the terms, conditions, or privileges of the rental of a dwelling, or in the provision of services or facilities in connection therewith, because of familial status;

      c.   Making, printing, or publishing, or causing to be made, printed, or published any notice, statement, or advertisement, with respect to the rental of a dwelling that indicates any preference, limitation, or discrimination based on familial status, or an intention to make any such preference, limitation, or discrimination;

      d.   Representing to any person because of familial status that a dwelling is not available for rental when such dwelling is in fact so available,

e.    Coercing, intimidating, threatening, or interfering with any person in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by the Fair Housing Act;

f.    Charging additional rent or fees to households based on the number of children under 18; and

g.    Limiting or attempting to limit the number of children under 18 who may live in a mobile home or mobile home lot (except that defendants may comply with any reasonable state or local restriction regarding the maximum number of occupants permitted to occupy a dwelling).

### III. Nondiscrimination Policies and Procedures

2.    Defendants' responsibilities under this Consent Order shall apply to each and every dwelling unit, and each mobile home lot, in which any Defendant has an ownership, management, or other financial interest. Dwelling units subject to this Order are hereinafter referred to as "covered dwelling units," a current list of which is attached as Exhibit A. Defendants' signatures to this Order serve as a certification of the completeness and accuracy of this list.

3.    Defendants shall prepare and implement uniform, non-discriminatory Policies and Procedures regarding the rental of covered dwelling units that shall be

applied equally to all applicants, actual and prospective, regardless of their familial status (having children, regardless of the number of children, under 18). The Non-Discrimination Policy shall be in the form shown in the attached Exhibit B.

### IV. Notice to Public of Nondiscrimination Policies

4.     Within thirty (30) days after the date of entry of this Consent Order, Defendants shall take the following steps to notify the public of their nondiscriminatory policies:

a.     In the reception and business office areas maintained by the Defendants for the mobile home park business and at the tanning and fitness center offices, Defendants shall prominently post fair housing signs no smaller than ten (10) inches by fourteen (14) inches that indicate that all mobile homes or lots are available for rent on a nondiscriminatory basis. A poster that comports with 24 C.F.R. Part 110 will satisfy this requirement.

b.     Whenever any covered dwelling unit is available, Defendants shall prominently post an easily readable "For Rent" or "Vacancy" sign or notice at the mobile home park. The sign or notice shall include the slogan "Equal Housing Opportunity" and/or the fair housing logo. Such slogan and logo shall be prominently displayed and easily readable.

c.     Include the words "Equal Housing Opportunity" and the fair

housing logo in all rental advertising conducted by Defendants, their agents or employees, in newspapers, flyers, handouts, telephone directories and other written materials; on radio, television or other media broadcasts; and on all billboards, signs, pamphlets, brochures and other promotional literature, provided that this requirement does not compel Defendants to advertise in any of these media, but does require compliance with this provision whenever Defendants so advertise. The words and/or logo shall be prominently placed and easily readable.

        d.      Include the following Notice of Non-Discrimination phrase in the standard rental application and the standard rental agreement used for covered rental dwelling units, and include the Notice in all rules, regulations, advertising of any kind, whether print, verbal or electronic media, of Pina's Mobile Home Park.  In addition, any correspondence, physical or electronic, from the Witheringtons on behalf of Pina's Mobile Home Park shall contain within the signature block the following Notice:

> **"NOTICE:  We are an equal housing opportunity provider.**
>
> **We do not discriminate on the basis of race, color, sex,**
>
> **national origin, religion, disability or familial status."**

Letters of equal or greater font size to those of the text in the body of the document are required.

## V. Mandatory Training

5.    Within thirty (30) days of the entry of this Consent Order, Defendants shall provide a copy of this Order and the Nondiscrimination Policies and Procedures to their agents and employees involved in showing, renting, or managing of any and all covered dwelling units and secure the signed statement from each agent or employee acknowledging that he or she has received and read the Order and the Nondiscrimination Policies and Procedures, has had the opportunity to have questions answered about the Order and Nondiscrimination Policies and Procedures, and agrees to abide by the relevant provisions of the Order and said policies and procedures.  This statement shall be in the form of Exhibit C.

6.    During the term of this Order, within five (5) days after each new agent or employee becomes involved in showing, renting, or managing any covered dwelling units, Defendants shall provide a copy of this Order and the Nondiscrimination Policies and Procedures to said agent or employee involved in showing, renting, or managing of any and all covered dwelling units and secure the signed statement from each agent or employee acknowledging that he or she has received and read the Order, had the opportunity to have questions about the Order answered, and that he or she has also received and read the

Nondiscrimination Policies Procedures, and agrees to abide by said policies and procedures and the relevant provisions of the Order. This statement shall be in the form of Exhibit C.

7.    Within sixty (60) days from the date of entry of this Order, Defendants and each owner or officer of the Pina's Mobile Home Park involved in management and administration, and all agents and employees of Pina's Mobile Home Park involved in showing, renting, or managing any covered dwelling units shall undergo in-person training on the Fair Housing Act, with specific emphasis on discrimination on the basis of familial status. The training shall be conducted by an independent, qualified third party, approved in advance by the United States, and any expenses associated with this training shall be borne by Defendants. Defendants shall obtain from the trainer certifications of attendance, executed by each individual who received the training, confirming their attendance, in a form acceptable to the United States. This confirmation shall include the name of the course, the date the course was taken, and the length of the course and/or time within which the course was completed.

## VI. Processing Rental Applications, Record Keeping, and Compliance Testing

8.    Processing Rental Applications

Within sixty (60) days from the date of entry of this Order, Defendants shall

develop and implement, with respect to all covered dwelling units, objective, uniform, non-discriminatory standards and procedures for the processing of applications, the establishment and maintenance of an Availability List, the establishment and maintenance of a Waiting List and a procedure for notifying people who are on the Waiting List about an available unit or lot, and a procedure for deciding in a non-discriminatory manner which applicants shall be permitted to rent available dwellings or lots. Such standards and procedures shall be submitted to the United States for approval in advance of their implementation and shall be consistent with the provisions of this Section. The standards and procedures shall be posted and prominently displayed in the Pina's Mobile Home Park rental office and in any office where there is rental activity and/or personal contact with applicants (including the tanning and fitness facility on the property), and a copy of these standards and procedures shall be made available upon request to any applicant for the rental of a dwelling or lot. For the duration of this Order, these rental standards and procedures may be modified only if written notice is given to counsel for the United States thirty (30) days before modifications are to take effect.

9.    Record Keeping

With respect to the rental of covered dwelling units or lots, within thirty

(30) days of the date of this Order, Defendants shall ensure that each of the
following are maintained and updated as new information becomes available:

      a.    An Availability List on a daily basis that includes the address
and dwelling or lot number known to be available or reasonably expected to be
available for rental within thirty (30) days; monthly rent for each such dwelling or
lot; security deposit for each such dwelling or lot; the date Defendants or their
agents or employees were first informed it would be available for rental, and the
first date it would be available for rental or occupancy by a new tenant.
Defendants and their agents/employees shall share information on the Availability
List with each person who visits or calls the rental office to inquire about the
availability of rental dwellings or lots;

      b.    Guest Cards:  A request shall be made of all persons who visit
or inquire about rental units at the Pina's Mobile Home Park to fill out a Guest
Card providing the date of the visit, the visitor's name, address, daytime and
evening telephone numbers, the number of children under the age of 18 expected
to live in the dwelling or lot, and the date by which they wish to move.
Defendants shall note on the Guest Card the dwelling units or lot the person was
shown and whether the person was given an application.  The top portion of the
Guest Card shall contain the following disclaimer: *"The following information is*

*requested to assist Pina's Mobile Home Park in complying with the federal Fair*

*Housing Act and will be kept confidential.  This information is <u>not</u> required in*

*order to rent an apartment.* ";

        c.     A Waiting List for all persons who inquire by telephone or in

person about renting a dwelling from Defendants and who are informed that there

are no vacancies or available apartments to rent.  This Waiting List shall indicate

the date of the visit or telephone call, the visitor's or caller's name, address,

daytime and evening telephone numbers, the date on which the person wishes to

move and any other relevant information (such as a preference regarding the

number of bedrooms).  With regard to those who inquire in person, Defendants

shall indicate whether the individuals have any children under 18 and if so, how

many.  The Defendants shall also note on the waiting list the date, time, and

employee or other person who contacted any individual to inform him or her of

any vacancies, and the manner of each attempt to contact persons on the list; and

        d.     A Rental Application Log maintained on a daily basis that sets

forth the name of the applicant, the number of children under 18, if any, residing

with the applicant, whether the application for tenancy was approved or rejected,

the lot number occupied for all approved applicants, and a detailed explanation for

all rejected applications.

10.    Compliance Testing

The United States may take steps to monitor Defendants' compliance with this Order including, but not limited to, conducting fair housing tests at any dwelling in which any Defendant, now or in the future, has a direct or indirect ownership, management, or financial interest.

## VII. Reporting Requirements

11.    Within sixty (60) days of the date of entry of this Consent Order, and every six (6) months thereafter for the duration of this Order, Defendants shall deliver to counsel for the United States[1] a report containing information about Defendants' compliance efforts during the preceding reporting period, including but not limited to:

a.    Copies of all mandatory education acknowledgments signed by Defendants, their agents and employees, and all certifications of attendance of each participant in such educational program, pursuant to Section V of this Order;

b.    Copies of all Availability Lists, Guest Cards and other information recorded by any means related to any inquiries regarding the availability of rental dwellings, including Rental Application Logs, and Waiting

---

[1] All documents or other communications required by this Order to be sent to counsel for the United States shall be addressed as follows: U. S. Attorney, Southern District of Alabama, Attn.: Gary Alan Moore, Assistant United States Attorney (Affirmative Civil Enforcement), 63 South Royal Street, Suite 600, Mobile, AL 36602 or as otherwise directed by the United States. If the Consent Order requires transmission by facsimile, the communication shall also be sent via facsimile to 251.441.5051.

Lists maintained pursuant to Section VI of this Order;

    c.    Copies of lists setting forth the occupancy of each covered dwelling or lot by address and lot number, including the name and familial status of each tenant in that dwelling or lot during the reporting period;

    d.    Photographs of each office in which rental activity is conducted, showing the fair housing signs required by Section IV of this Order; and

    e.    An updated list of all covered dwelling units or lots.

12. During the period in which this Order is in effect, Defendants shall preserve all records that are the source of, contain, or relate to any of the information pertinent to the obligations under this Order, including all rental applications, leases, and rental roll ledgers, and occupancy lists for all covered dwelling units as well as records relating to the transfer of interest in dwelling units as set out in Section XI below. Upon reasonable notice to counsel for Defendants, representatives of the United States shall be permitted to inspect and copy all such records at any and all reasonable times or, upon request by the United States, Defendants shall provide copies of such documents.

13. During the period in which this Order is in effect, Defendants shall notify counsel for the United States in writing within fifteen (15) days of receipt of

any written or oral complaint against Defendants, or Defendants' agents or employees, regarding familial status discrimination in housing.  If the complaint is written, Defendants shall provide a copy of it with the notification.  The notification shall include the full details of the complaint, including the complainant's name, address, and telephone number.  Defendants shall also promptly provide the United States all information it may request concerning any such complaint and shall inform the United States within fifteen (15) days of any resolution of such complaint.

## VIII.  Compensation of Aggrieved Persons

14.    Within ten (10) calendar days after the date of entry of this Consent Order, the Defendants shall deliver to the United States a check for TEN THOUSAND and NO/100 DOLLARS ($10,000) made payable to the order of Hope I. Watkins; a check for ONE THOUSAND and NO/100 DOLLARS ($1,000) made payable to the order of Hope I. Watkins as Mother, Guardian and Next-Friend, for the use and benefit of █████████████ Watkins; a check for ONE THOUSAND and NO/100 DOLLARS ($1,000) made payable to the order of Courtney Nicole Watkins; and a check for ONE THOUSAND and NO/100 DOLLARS ($1,000) made payable to the order of Marquis Lapoetry Watkins. Counsel for the United States shall not forward the checks to the Watkins until the

United States has received signed originals of the release attached hereto as

Attachment E and a copy of the Consent Order entered by this Court.  The United

States shall forward the executed releases to defendants upon receipt.

15.    Within sixty (60) calendar days after entry of this Consent Order, the

Defendants shall deposit the sum of NINETY-ONE THOUSAND ONE

HUNDRED THIRTY and NO/100 DOLLARS ($91,130) into an interest-bearing

account for the purpose of compensating persons harmed by Defendants'

discriminatory rental practices (hereinafter "aggrieved persons") as shown on

Exhibit D, attached hereto.  In addition, within sixty (60) calendar days of the

entry of this Order,  Defendants shall submit proof to the United States that this

account has been established and the funds deposited.

16.    The United States and Defendants, and their counsel of record, shall

make reasonable efforts and shall fully cooperate with the other to locate the

present whereabouts and mailing address of each of the aggrieved persons shown

on Exhibit D so that payment in the amount reflected in Exhibit D may be paid to

each such person as soon as possible.

17.    In the event some of those aggrieved persons shown on Exhibit D

cannot, after six (6) months, be located, then Defendants shall not be required to

make payment to those aggrieved persons.

18.    When counsel for the United States has received a check from Defendants payable to an aggrieved person and a signed release in the form of Exhibit E from the aggrieved person, counsel for the United States shall deliver the check to the aggrieved person and the original, signed release to counsel for Defendants.  No aggrieved person shall be paid until he/she has signed and delivered to counsel for the United States the release at Exhibit E.

19.    After the satisfaction of paragraphs 15-18, and expiration of the corresponding time periods, any money remaining in the Settlement Fund shall be released to Defendants.  Additionally, any interest accrued on the Settlement Fund, less banking charges for the account, which are the responsibility of Defendants, shall revert to Defendants.

### IX.  Civil Penalty

20.    Within sixty (60) calendar days after the entry of this Consent Order, the Defendants shall pay THIRTY THOUSAND and NO/100 DOLLARS ($30,000) to the United States as a civil penalty, pursuant to 42 U.S.C. § 3614(d)(1)(C).  Payment shall be delivered to counsel for the United States in the form of a cashier's check payable to the "United States Treasury."

### X.  Acquisition of Dwelling Units

21.    If, at any time during the term of this Consent Order, any Defendant

acquires a direct or indirect ownership, management, or other financial interest in any other dwelling unit or lot, said unit or lot shall become a "covered dwelling unit" subject to all relevant provisions of this Order.  Defendant shall notify counsel for the United States within thirty (30) days of acquiring said interest. The notice shall include identification of the nature of Defendant's interest in the property; the address; the number of individual dwelling units; the number of bedrooms in each unit; the names of any existing tenants; and the number of children under 18 residing with each such tenant.  Defendants shall also include in their notice to counsel for the United States a copy of the documents memorializing the transfer in interest and a copy of the lease for any existing tenant(s).

## XI.  Transfer of Interest in Covered Dwelling Units

22.   If at any time while this Order remains in effect, a Defendant ("transferring Defendant") decides to transfer the entirety of said Defendant's direct or indirect ownership, management, or other financial interest in a covered dwelling unit to an unrelated party ("purchaser" or "transferee") in an arms-length transaction,[2] the transferring Defendant shall take the following steps:

---

[2] For purposes of this Consent Order, "arms-length transaction" is defined as a transaction such as a contract or agreement that has been arrived at in the marketplace between independent, non-affiliated persons, unrelated by blood or marriage, with opposing economic interests regarding that contract.

a.     At least thirty (30) days prior to completion of the sale or transfer, provide to each prospective purchaser or other transferee a copy of this Order along with written notice that the subject dwelling unit (or units) is (are) subject to Sections II - VII and XI - XIII of the Order;

b.     At least thirty (30) days prior to completion of the sale or transfer, provide to the United States, by facsimile and first-class mail, written notice of its intent to sell or otherwise transfer Defendant's interest in the dwelling unit(s), along with a copy of the notice sent to each prospective transferee, containing each prospective transferee's name, address and telephone number;

c.     Within thirty (30) days following completion of the sale or other transfer, the transferring Defendant shall provide to the United States by first-class mail a copy of the documents memorializing the transfer in interest of the dwelling unit(s);

d.     The transferring Defendant shall require the transferee, as a condition of the sale or other transfer, to agree in writing to perform all obligations and be liable for compliance with Sections II - VII and XI - XIII of this Order for the duration of this Order, with respect to the subject dwelling unit(s);

e.     If the transferring Defendant complies with parts a, b, c, and d, above, and thereby transfers all of Defendant's ownership, management, or other financial interest in the dwelling unit(s) or lots to the purchaser or other transferee,

said Defendant will thereafter be relieved of Defendant's obligations under Sections II - VII and XI - XII of this Order, but only with respect to the dwelling units in which all interest was so transferred.  Defendant shall otherwise remain liable for compliance with all sections of the Order with respect to all other covered dwelling units.

23.    If the proposed transfer of interest is not an arms-length transaction, the transferring Defendant must comply with each requirement set out in the preceding subparagraph a, b, c, and d, above.  In addition, the transferring Defendant shall remain jointly and severally liable, along with the purchaser or other transferee, for any violations of Sections II - VII and XI - XIII of this Order with respect to the relevant dwelling unit(s) for the duration of the Order.  In addition, the transferring Defendant shall otherwise remain liable for compliance with the Consent Order with respect to all other covered dwelling units.

## XII.  Scope and Duration of Consent Order

24.    The provisions of this Consent Order shall apply to all Defendants, their employees, agents, successors, and all persons acting in active concert or participation with them.

25.    This Consent Order is effective immediately upon its entry by the Court and shall remain in effect for four (4) years.

26.    The Court shall retain jurisdiction for the duration of this Order to

enforce the terms of the Order, after which time the case shall be dismissed with prejudice.

27.     All parties shall be responsible for their own attorney's fees and court costs, except as provided for in Section XIII below.

## XIII.  Remedies for Non-Compliance, Time for Performance, and Modifications

28.     The United States may move the Court to extend the period in which this Order is in effect if Defendants violate one or more terms of the Order or if the interests of justice otherwise require an extension of the terms of the Order.

29.     Any time limits for performance imposed by this Order may be extended by mutual written agreement of the parties.

30.     The parties to this Order shall endeavor in good faith to resolve informally any differences regarding interpretation of and compliance with this Order prior to bringing such matters to the Court for resolution.  However, in the event the United States contends that there has been a failure by any Defendant, whether willful or otherwise, to perform in a timely manner any act required by this Order or otherwise to comply with any provision thereof, the United States may move this Court to impose any remedy authorized by law or equity, including, but not limited to, an order requiring performance of such act or deeming such act to have been performed, and an award of any damages, costs, and attorney's fees

which may have been occasioned by the Defendant's or Defendants' violation or failure to perform.

31.    The parties agree that in the event that any Defendant engages in any future violation of the Fair Housing Act, such violation shall constitute a "subsequent violation" pursuant to 42 U.S.C. § 3614(d).

32.    The parties further agree that in the event Defendants fail, within sixty (60) calendar days from the date of entry of this Consent Order, to deposit the full amount of $91,130 in good funds into the banking account described in ¶ 15, above, and/or fail to pay to the United States the full amount of $30,000 in good funds as described in ¶ 20, above, the United States shall move the Court to enter judgment against the Defendants, jointly and severally, for the total sum of $121,130 in favor of the United States.  The Defendants expressly agree the Motion by the United States shall be represented to the Court as being filed without opposition by Defendants.  If the Court desires confirmation of such consent to judgment, Defendants expressly agree they shall immediately provide such notification to the United States Attorney's Office and to the Court.  Further, in the event of Defendants' failure to timely or fully pay as required in ¶s 15 and 20, Defendants completely understand no money will be returned to them, nor will any interest earned on any funds be paid to them, and their assets and income will be subject to execution by the United States to recover the judgment amount.

**IT IS SO ORDERED:**
This 22 day of _Sept_ , 2009.

_(signature)_

UNITED STATES DISTRICT JUDGE

By their signatures below, the parties consent to the entry of this Consent Order.

**For the United States:**

ERIC H. HOLDER, JR.
Attorney General

_(signature)_

LORETTA KING
Acting Assistant Attorney General
Civil Rights Division

_(signature)_
STEVEN H. ROSENBAUM
Chief
ELIZABETH A. SINGER
Director, U.S. Attys' Fair Hous. Prog.
Housing and Civil Enforcement
Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Northwestern Building, 7th Floor
Washington, D.C. 20530
Telephone:  202.514.6164
Facsimile: 202.514.1116

Page -23-

EUGENE A. SEIDEL
UNITED STATES ATTORNEY
(ACTING)

Dated:  September __17__, 2009.

_____
Gary Alan Moore (MOORG6851)
Assistant United States Attorney
United States Attorney's Office
63 S. Royal Street, Suite 600
Mobile, Alabama 36602
Telephone:  251.441.5845
Facsimile:   251.441.5051

**For Defendants:**

Dated:  September __17__, 2009.

_____
W. Donald Bolton, Jr. Esquire (BOL014)

P. O. Box 1965
Foley, AL 36536
251.943.3860

_____
David Horton,  Esquire (HOR039)

P. O. Box 1965
Foley , AL 36536
251.943.3860

_____
Arthur C. Witherington

_____
Pina D. Witherington, also known as Pina H. Witherington

Doing Business as Pina's Mobile Home Park

Exhibit A
List of Covered Dwelling Units

<u>Address</u>

1105 Whispering Pines Road
Daphne, AL 36526

<u>No. of Rental Units</u>

All Mobile Homes at this Address

All Lots onto which a Mobile Home
or RV or Camper Trailer may be
located at this Address

Any Other dwelling possibility,
including but not limited to RV
or Camper Trailer Locations

Exhibit B

## NONDISCRIMINATION POLICY

It is the policy of Pina's Mobile Home Park to comply with Fair Housing Act, Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601, et seq., by ensuring that mobile homes and lots onto which a mobile home, recreational vehicle or travel trailer may be installed are available to all persons without regard to familial status (having children under age 18, regardless of the number of children).  This policy means that, among other things, Pina's Mobile Home Park and all its agents or employees with the responsibility for renting or managing any dwelling units must not discriminate in any aspect of the rental of dwellings against qualified applicants or tenants because of familial status.  Such agents and employees may not:

a.  Refuse to rent after the making of a bona fide offer, or refuse to negotiate for rental of, or otherwise make unavailable or deny, a dwelling to any person because of familial status;

b.  Discriminate against any person in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection therewith, because of familial status;

c.  Make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the rental of a dwelling that indicates any preference, limitation, or discrimination based on familial status, or an intention to make any such preference, limitation, or discrimination;

d.  Represent to any person because of familial status that a dwelling is not available for rental when such dwelling is in fact so available;

e.  Coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by the Fair Housing Act;

f.  Charge extra rent based on the number of children under 18 in the household; or

g. Limit the number of children under 18 who can move into or live in a mobile home or mobile home lot (except that we may comply with any reasonable state or local restriction regarding the maximum number of occupants permitted to occupy a dwelling).

Any agent or employee who fails to comply with this non-discrimination policy will be subject to appropriate disciplinary action, which may include termination. Any action taken by an agent or employee that results in the unequal service, treatment or behavior to tenants on the basis of familial status may constitute a violation of state and federal fair housing laws.

Exhibit C

Employee/Agent Acknowledgment of Receiving and Reviewing Order
and Nondiscrimination Policies and Procedures

I have received a copy of the Consent Order entered in <u>United States v.</u>
<u>Witherington, et al.</u>, Civil Action No.08-0431-KD-B (S.D. Ala.).  I have also
received a copy of my employer's Nondiscrimination Policies and Procedures.  The
Consent Order and the Nondiscrimination Policies and Procedures were explained to
me by my employer, and all questions concerning these documents were answered.
I have read and understood the Consent Order and the Nondiscrimination Policies and
Procedures.

_____

DATE

_____

EMPLOYEE/AGENT NAME (PRINT)

_____

EMPLOYEE/AGENT SIGNATURE

Exhibit D

(see list of aggrieved persons, landscape print mode, separately attached)

Exhibit E

Rélease

In consideration for the parties' agreement to the terms of the Consent Order entered in United States v. Arthur C. Witherington, et al., Civil Action No. 08-0431-KD-B(S.D. Ala), and Defendants' payment to me of $_____, pursuant to the Consent Order, I hereby release and forever discharge all claims related to the facts at issue in the litigation referenced above, or in any way related to that litigation, and any other claims arising from the housing discrimination alleged in that litigation up to and including the date of execution of this release, that I may have against any of the Defendants, all related entities, parents, predecessors, successors, subsidiaries and affiliates, and all of their past and present directors, officers, agents, managers, supervisors, shareholders and employees and their heirs, executors, administrators, successors or assigns.

Executed this _____ day of _____, 2009.

_____
[Print Name]

_____
[Signature]

_____
_____
[Address]

_____
[Telephone]

Witness:

_____

_____
[address and telephone number]

Page -30-

**Pina's Mobile Home Park Tenants With Children Below 18, After Effective Date of Statue (3/1989)**
(NOTE: in this chart we presume tenant remains through June '09 for all instances where shown in 2008 ledger "sheet"; dollar amount is additional rent only, not including interest or other damages the tenants and children could claim)

| Last Name | First Name | Lot # | Number of Children, etc. | Move-In Date | Move-Out Date | Total Additional Amount Charged Over Time |
|---|---|---|---|---|---|---|
| BAKER | Dorcus | B-14 | 2 (R 500) | 9/05 | 12/05 | imputed as included in Ds rent of their owned unit 2 (children) x $15 (extra) x 3 (months) =$90. |
| BOUTRIES | Wendy | B-17 | 2 (R 452) | 5/06 | Still there | 2x15x37=$1,100 |
| BROOKS | Randy | B-23 | 2 (R 502) | 10/05 | Still there | 2x15x45=$1,350 |
| CAMPBELL | Kelly | A-8 | 2 (R 1097) | 6/05 | 10/06 | 2x15x7=$210 |
| DENTON | Kolleen | A-6 | 1 (below 18) (R 447) | 2/2000 | Still there (appears not paying after 9/08) | 1x15x89=$1,335 |
| DOANE | Debbie | B-1 | 2 (R 521) | 9/05 | Still there (appears not paying lately) | imputed as included in Ds rent of their owned unit 2x15x46=$1,380 |
| EVANS | Carolyn | A-5 | 2 ( R 514) | 12/92 | Still there (appears not paying lately) | 2x15x198=$5,940 |
| HICKS | Celena | B-18 | 2 ( R 457) | 3/07 | 7/07 | 2x15x5=$150 |
| MORROW | Jeremy | B-15 | 1 (notes from 2/17/09 conf of parties) | 1/02 | 6/08 | imputed as included in Ds rent of their owned unit 1x15x78=$1,170 |

EXHIBIT
D

| Last Name | First Name | Lot # | Number of Children, etc. | Move-In Date | Move-Out Date | Total Additional Amount Charged Over Time |
|---|---|---|---|---|---|---|
| NEWBURN | Christy | B-14 | 2 ( R 448) | 9/07 | Still there | imputed as included in Ds rent of their owned unit 2x15x22=$660 |
| NICHOLS | Monte | A-9 | 1 ( R 449) | 10/07 | Still there | 1x15x21=$645 |
| NORRIS | Kim | B-16 | 1  ( R  451 ) | 9/06 | 12/06 | 1x15x4=$60 |
| SMITH | Houston | B-7 | son, grandson & daughter-in-law ( R 476) | 2/97 | Still there | 1x15x148=$2,220 see notes re 9/06 re additional people being charged |
| STALLINGS | Barbara | A-8 | 1 (notes from 2/17/09 conf of parties) | 7/98 | 12/04 | imputed as included in  Ds rent of their owned unit 1x15x78=$1,170 |
| SHEPARD | Ken | B-5 | 2 ( R 1098) | 7/08 | Still there | 2x15x12=$360 |
| SULLIVAN | Michael | B-5 | 2 ( R 1099) | 3/01 | 6/02 | 2x15x15=$225 |
| WALLS | Barbara | A-9 | 2 ( R 1100) | 10/02 | 12/03 | 2x15x15=$225 |
| BLANKENSHIP | Giselle | B-27 | 1  Sandra ( R 480) | 4/30/86 | Sandra turned 18 in 1993 and still there; Statute effective 3/89 | 1x15x57(from effective date to 18 birthday)=$855 |
| BOONE | Darry | A-9 | 4 all below 18 ( R 499) | 9/05 | 6/07 | 4x15x22=$1,320 |

| Last Name | First Name | Lot # | Number of Children, etc. | Move-In Date | Move-Out Date | Total Additional Amount Charged Over Time |
|---|---|---|---|---|---|---|
| DRAWHORN | Kelly | B-16 | 1 ( R 519) | 9/07 | 7/08 | 1x15x11=$165 |
| DRISKELL CLAY-FORD | Pamela | A-4 | 2: ▇ 7; BJ, 9  ( R 515) | 7/99 | Still there<br>BJ turned 18 in '08 | BJ    1x15x114=$1,710<br>▇ 1x115x120=$1,800 |
| FLOWERS | Cynthia | C 4 | 2 ( R 465) | 1/02 | Still there | 2x15x90=$2,700 |
| GREENHAW | Lynda | B-11 | 1   ( R 474 and 516) | 6/97 | Krystie turned 18 in 2004 (Lynda G. Johnson is still there) | 1x15x91=$1,365 |
| JONES | Rickie..Sallie | B-13 | 3 ( R 481) | 6/1983 | statute effective 3/89<br>Shirley turned 18, 1990<br>Dee turned 18, 1992<br>Rickie turned 18, 2000 | 1x15x21=$315<br>1x15x45=$675<br>1x15x141=$2,115 |
| KNOWLES | Geneva | B-12 | 1 ( R 517) | 10/08 | still there | 1x15x9=$135 |
| LORD | Stephen | | 2 ( R  423, 501) | 3/07 | 8/31/07 evicted non-pay | 2x15x6=$180<br>ltr said $30/ea., not $15 ea. ( R423) |
| McMANN | Bill | A-2 | 2 ( R 458) | 10/05 | 2/08 | 2x15x37=$1,110 |
| NADER | Joseph | A-1 | 1 (Joseph ,11) ( R 475) | 10/92 | Joseph 18 in 1999 parents still there | 1x15x87=$1,305 |

| Last Name | First Name | Lot # | Number of Children, etc. | Move-In Date | Move-Out Date | Total Additional Amount Charged Over Time |
|---|---|---|---|---|---|---|
| STRASSER | Russell | B-2 | 1 (Paul, 3)<br>( R 482) | 6/83 | still there<br>Paul turned 18 in 1998; statute eff. 3/89 | 1x15x117=$1,755 |
| LESCH | Rosalyn | B-8 | 1 ( R 1101) | 5/08 | 6/09 | 1x15x13=$195 |
| JOHNSON | Kimberly | | 1 ( R 1102) | 10/05 | 1/06 | 1x15x4=$60 |
| STRASSER | Paul & Ashleigh | B-20 | 1 (R 1103) | 1/02 | 12/03 | 1x15x24=$360 |
| MEARS | Amanda | C-6 | 1(R 1104) | 7/01 | 3/03 | 1x15x21=$315 |
| GILSDORF | Julie | A-12 | 1 (R 1105) | 2/00 | 2/03 | 1x15x27=$405 |

NOTE: Assuming we can locate these tenants for payment of actual damages as calculated above, the sliding scale for additional *compensatory damages* (which will partially reimburse the aggrieved person for the value of the lost money over time [interest, foregone earnings], embarrassment, humiliation, pain and suffering, etc.) to be added to their actual damages. The sliding scale operates as follows:

- If *actual damages* < $500, add $1,000 in *compensatory damages* (Appendix A shows 15 households)
- If > $500 and < $1,000, add $1,500 (Appendix A shows 3 households)
- If > $1,000 but < $2,000, add $2,000 (Appendix A shows 11 households)
- If > $2,000, add $2,500 (Appendix A shows 5 households)

N:\GMoore\Witherington, adverse USA\Tenant Chart 6-11-09 EX D to CD-Revised 9-11-09.wpd